IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **KATHERINE COX,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV621 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| **MUTUAL OF OMAHA INSURANCE CO.,** | ) | |
| A Nebraska Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 12).[1] The defendant filed a brief (Filing No. 14) and an index of evidence (Filing No. 13) in support of the motion. The plaintiff did not file an opposition to the motion. For the reasons stated below, the court concludes the defendant's motion should be granted and judgment entered against the plaintiff.

### INTRODUCTION

The plaintiff was employed with Mutual of Omaha from January 1994 until October 25, 2003. In May 2002, the plaintiff was involved in an automobile collision and sustained injuries. Based on those injuries, the plaintiff received long-term disability benefits from September 7, 2003 until late 2003. The plaintiff alleges she was terminated from her employment on October 25, 2003. The plaintiff states she remains disabled, however, the defendant refuses to reactivate benefits under the defendant's long-term disability plan. On November 12, 2004, the plaintiff filed a complaint against the defendant in the District Court of Douglas County, Nebraska, alleging breach of contract. **See** Filing No. 1, Exhibit A (Complaint). On December 10, 2004, the defendant filed a notice of removal based on the original jurisdiction of this court over the plaintiff's claim for benefits under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*,

---

[1] The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties. **See** Filing No. 7. Thereafter, the magistrate judge recused himself and the case has been reassigned to Judge Joseph F. Batallion. See Filing No. 15.

as amended by the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161, *et seq.*  **See** Filing No. 1.

On August 22, 2005, the defendant filed a Motion for Summary Judgment (Filing No. 12) seeking judgment in its favor on the plaintiff's claim. The plaintiff did not file a resistance. The court will address the legal issues in the same sequence as in the defendant's brief.

## UNCONTROVERTED FACTS

In May 2002, the plaintiff was an employee of the defendant. Complaint at ¶ I. In May 2002, the plaintiff was a "participant" (**see** ERISA § 3(7), 29 U.S.C. § 1002(7)) in a long-term disability plan sponsored by the defendant (the "Plan"). Complaint at ¶ II. The defendant is the "plan sponsor" (**see** ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B)) and the "administrator" (**see** ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A)) of the Plan. **See, e.g.,** Exhibit A(3) MUT-323.

The Plan is an "employee welfare benefit plan" or "welfare plan" within the meaning of ERISA. **See** ERISA § 3(36), 29 U.S.C. § 1002(36). Benefits under the Plan were funded by an insurance policy issued by United of Omaha Life Insurance Company ("United"), policy number GLTD-EH10, which, by its terms, incorporates the certificate of insurance. **See** Index Exhibit A(3) MUT-318 to MUT-326 (policy); Exhibit A(1) MUT-10 to MUT-40 (certificate). In relevant part, the Plan provides that a participant who becomes disabled will be paid benefits during a period of disability; the benefits begin only after the participant has satisfied the elimination period and end upon certain enumerated events, including the day that the participant is no longer disabled. **See** Index Exhibit A(1) MUT-24 to MUT-25. The Plan defines disability and disabled as follows:

> **Disability and Disabled** mean that because of and [sic] Injury or Sickness, a significant change in Your [the participant's] mental or physical functional capacity has occurred in which You are:
>     (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part time or full time basis . . . and

> (b) unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings due to that same Injury or Sickness;
> After a Monthly Benefit has been paid for 2 years, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation for which You are reasonably fitted by training, education or experience.

**See** Index Exhibit A(1) MUT-13.

The Plan establishes the elimination period as 180 calendar days (Index Exhibit A(1) MUT-18) and defines the elimination period as "a period of continuous Disability which must be satisfied before You are eligible to receive benefits. No benefit is payable during the elimination period." **See** Index Exhibit A(1) MUT-13. The Plan gives the plan administrator discretion to interpret and apply the provisions of the plan: "The Plan Administrator reserves the right to make final decisions concerning the interpretation and application of the Plan document." **See** Index Exhibit A(1) MUT-32. Under the Plan, the defendant delegates to United the authority to interpret the Plan and make final and binding decisions "regarding the amount and payment of any Plan benefits in accordance with the terms of the Plan." **See, e.g.,** Index Exhibit A(1) MUT-38; Exhibit A(3) MUT-323. Similarly, the policy gives United "the discretion and the final authority to construe and interpret the policy," which means that it has "the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits[.]" **See** Exhibit A(3) MUT-323.

The plaintiff has had multiple back surgeries, including in 1980 when the plaintiff had an operation on her lumbar spine; in 1990, the plaintiff had an operation on her cervical spine; in 2000, the plaintiff had a second operation on her lower back. **See** Exhibit A(2) MUT-255; MUT-293. In May 2002, the plaintiff was in a car accident. Complaint at ¶ III.). March 11, 2003, was the plaintiff's last day at work for the defendant. **See** Exhibit A(2) MUT-177. On March 17, 2003, the plaintiff began treatment with Dr. Gooding, an orthopedic surgeon, to whom she brought complaints of pain in her neck and lower back. **See** Exhibit A(2) MUT-255 to MUT-256. In April 2003, Dr. Gooding performed surgery on the plaintiff's lower back and on the plaintiff's neck in July 2003. ***Id.***

In May 2003, the defendant sent the plaintiff a letter, advising her that she could be entitled to long-term disability ("LTD") benefits.  **See** Exhibit A(2) MUT-210.  Also in May 2003, the plaintiff submitted the "Employee's Statement" portion of her LTD claim.  **See** Exhibit A(2) MUT-200 to MUT-202.  Shortly after the July surgery, Dr. Gooding submitted the "Physician's Statement" portion of the plaintiff's LTD claim.  **See** Exhibit A(2) MUT-206 to MUT-207.  On July 31, 2003, the defendant conducted an interview with the plaintiff in order to gather information relating to the plaintiff's LTD claim.  **See** Exhibit A(2) MUT-191 to MUT-197.  Following the interview, the defendant solicited additional information from Dr. Gooding concerning the plaintiff's condition.  **See** Exhibit A(2) MUT-190.  Dr. Gooding submitted a statement indicating that the plaintiff became totally disabled on April 14, 2003, and that she would remain totally disabled until October 14, 2003.  **See** Exhibit A(2) MUT-253.  Additionally, the defendant's internal guidelines suggested that the normal recovery period for a spinal surgery should be eight weeks.  **See** Exhibit A(2) MUT-190, MUT-285.  The defendant approved and paid LTD benefits for the plaintiff from September 9, 2003 (the day after the end of the Elimination Period), until October 14, 2003. (MUT-171.)

In October 2003, the plaintiff called and verbally advised the defendant that Dr. Gooding had extended her return-to-work date to December 1, 2003.  **See** Exhibit A(2) MUT-170.  On November 10, 2003, the defendant sent the plaintiff a letter stating that no documentation had been received that would support an extension of her return-to-work date from October 14 to December 1, 2003, and clarifying that there was no information "to support [her] disability claim past 10/14/03."  **See** Exhibit A(2) MUT-169.  On November 11, 2003, the defendant received a letter from the plaintiff, which enclosed a Notice of Award from the Social Security Administration, finding that the plaintiff was disabled.  **See** Exhibit A(2) MUT-165 to MUT-168.

On November 26, 2003, the defendant sent the plaintiff a determination letter denying her claim for benefits after October 14, on the grounds that the information from the plaintiff's medical providers indicated that she could have gradually returned to work after that date.  **See** Exhibit A(2) MUT-157 to MUT-159.  In this letter, the defendant notified the plaintiff could appeal the decision and provide additional medical information

before the defendant would consider awarding additional benefits, and that it would be helpful if the additional medical information included a functional capacity evaluation. **See** Exhibit A(2) MUT-157 to MUT-159.  On December 1, 2003, the defendant received a letter from the plaintiff appealing the denial of her claim and indicating that she would be submitting additional medical information.  **See** Exhibit A(2) MUT-154 to MUT-156.

On December 10, 2003, United sent the plaintiff a letter confirming receipt of her letter appealing the denial of her claim.  **See** Exhibit A(2) MUT-153.  United's letter also advised the plaintiff that her additional information should explain why she was unable to return to work on October 14, 2003, as Dr. Gooding had originally suggested, and should also "document what functional limitations are present that would prevent [her] from performing [her] sedentary occupation."  *Id.*

On December 11, 2003, United received a letter dated December 8, 2003, from Dr. Gooding stating, in relevant part, that: the plaintiff was healing slowly from the surgeries; the plaintiff likely would have difficulty standing or sitting in one position for any extended period of time; and that "the last target date extensively discussed with [the plaintiff] and her husband for her being able to return to the work force would have been around December 1, 2003."  **See** Exhibit A(2) MUT-150 to MUT-151.  In the December 8, 2003 letter, Dr. Gooding did not indicate whether the plaintiff was suffering from an impairment significant enough to cause permanent or total disability past December 1, 2003, but that she was being treated thereafter by her family physician.  *Id.*  On December 12, 2003, United sent the plaintiff a letter requesting additional information: "we will need specific medical restrictions or limitation as to why you were unable to return to work on either October 14th or December 1st."  **See** Exhibit A(2) MUT-149.

On January 7, 2004, United received a facsimile letter dated December 10, 2003, from Dr. Cronican, plaintiff's family physician.  **See** Exhibit A(2) MUT-137; MUT-146 to MUT-148.  The December 10, 2003 letter describes the plaintiff's complaints of disabling pain, and states that in light of the plaintiff's medical history, Dr. Cronican thinks "it is entirely reasonable and appropriate for [the plaintiff] to pursue long-term disability."  **See** Exhibit A(2) MUT-146 to MUT-148.  Dr. Cronican did not provide any medical explanation

5

why, in contrast to Dr. Gooding's opinion, the plaintiff was unable to return to work on December 1. *Id.*

On January 13, 2004, United sent the plaintiff a letter indicating that because her physicians had not provided medical evidence in support of total disability, the plaintiff's appeal could not be completed without the plaintiff submitting to an independent medical examination ("IME"). **See** Exhibit A(2) MUT-137. On March 5, 2004, Dr. Charles Taylon, a neurosurgeon, performed the plaintiff's IME. **See** Exhibit A(2) MUT-103 to MUT-106. Dr. Taylon took the plaintiff's medical history, discussed her pain complaints with her, gave her a physical examination, and reviewed her medical records. *Id.* Dr. Taylon determined the plaintiff had a number of physical restrictions, but she was able to walk, sit, and stand for four hours each in an eight-hour workday. **See** Exhibit A(2) MUT-105 to MUT-106. Dr. Taylon found that the plaintiff's reflexes were symmetrical, that she had no sensory abnormalities, and that her MRI studies were "essentially normal." **See** Exhibit A(2) MUT-103 to MUT-104. Dr. Taylon completed a "physical capabilities worksheet" indicating that, with certain restrictions, the plaintiff was able to perform the duties of her occupation and was capable of working a full day. **See** Exhibit A(2) MUT-103 to MUT-106.

On March 18, 2004, United sent the plaintiff a letter informing her of the results of the appeal. **See** Exhibit A(2) MUT-97 to MUT-98. United determined that benefits would be payable only to December 1, 2003, the date Dr. Gooding had indicated the plaintiff could return to work. *Id.* In the letter, United advised the plaintiff that her administrative procedures had been exhausted, and that further review could be obtained by the courts. *Id.*

However, on March 25, 2004, the plaintiff sent United a letter "to appeal the decision to deny [her] long term disability." **See** Exhibit A(2) MUT-86 to MUT-88. In an effort to give the plaintiff every opportunity to pursue her claim for benefits, United sent the plaintiff's examination reports to Dr. Cronican, asked him to explain the findings with which he disagreed, and asked him to provide any supporting medical documentation. **See** Exhibit A(2) MUT-82 to MUT-85. In response, Dr. Cronican drafted a letter, stating that in his opinion, the plaintiff was disabled due to self-reported "chronic severe pain." **See** Exhibit A(2) MUT-80. However, Dr. Cronican did not provide any new medical information that

6

would support this opinion, or provide any specific medical explanation as to his basis for disagreeing with the opinion of Dr. Taylon.  **Id.**

United forwarded the plaintiff's file to a neurosurgeon for an external peer review, because Dr. Cronican's opinion differed from the opinions of Dr. Gooding and Dr. Taylon.  **See, e.g.,** Exhibit A(2) MUT-79.  The external peer review was performed by Dr. Vernon Mark, a neurosurgeon.  **See** Exhibit A(2) MUT-70 to MUT-72.  Dr. Mark acknowledged the plaintiff's reports of pain, but concluded that the plaintiff had no objective, functional limitation that would prevent her from holding a sedentary job on a full-time basis, provided that she complied with the restrictions noted by Dr. Taylon.  **Id.**  Dr. Mark noted pain is not an objective finding.  **Id.**  Based on Dr. Mark's report, United again denied the plaintiff any disability benefits after December 1, 2003.  **See** Exhibit A(2) MUT-67 to MUT-68.  All benefits due through December 1, 2003, have been paid to the plaintiff.  **See, e.g.,** Exhibit A(2) MUT-97.

## ANALYSIS

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  **See** Fed. R. Civ. P. 56(c); ***McAllister v. Transamerica Occidental Life Ins. Co.***, 325 F.3d 997, 999 (8th Cir. 2003).  When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial."  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249 (1986); **see also** ***Johnson v. Crooks***, 326 F.3d 995 1007-08 (8th Cir. 2003).  "An issue of material fact is genuine if it has a real basis in the record."  ***Hartnagel v. Norman***, 953 F.2d 394, 395 (8th Cir. 1992) (**citing** ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 586-87 (1986)).  A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment.'" ***Dulany v. Carnahan***, 132 F.3d 1234, 1237 (8th Cir. 1997) (**quoting** *Anderson*, 477 U.S. at 248).

Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of his claim. ***Bialas v. Greyhound Lines, Inc.***, 59 F.3d 759, 762 (8th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment bears the responsibility of informing the court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." ***Tenbarge v. Ames Taping Tool Sys., Inc.***, 128 F.3d 656, 657 (8th Cir. 1997) (**quoting** *Celotex*, 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")). Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

In the face of a properly-supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" ***Prudential Ins. Co. v. Hinkel***, 121 F.3d 364, 366 (8th Cir. 1997) (**quoting** Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings but, rather, must show specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); ***Liberty Mut. Ins. Co. v. FAG Bearings Corp.***, 153 F.3d 919, 922 (8th Cir. 1998). A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson***, 477 U.S. at 248. Additionally, under this court's local rules:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>.

**See** NECivR 56.1(b)(1) (emphasis added).

In the instant case, the plaintiff did not resist the defendant's motion. However, the court must proceed to consider whether there is any material fact in dispute and whether the defendant is entitled to judgment as a matter of law.

### A.   Standard of Review for Denial of Benefits

The Supreme Court has declared that a *de novo* standard of review applies to a challenge to a denial of benefits, unless the benefit plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. ***Firestone Tire & Rubber Co. v. Bruch***, 489 U.S. 101, 115 (1989). When a plan gives the administrator discretionary authority to determine eligibility for benefits, then a plan administrator's decision is reviewed for an abuse of discretion. ***Id.***; ***Hunt v. Metropolitan Life Ins. Co.***, 425 F.3d 489, 490 (8th Cir. 2005).

In this case, the Plan includes the appropriate language granting discretion to the administrator. "The Plan Administrator reserves the right to make final decisions concerning the interpretation and application of the Plan document." **See** Exhibit A(1) MUT-32. The plan administrator has delegated certain claim determination functions to the claims administrator, United, under the Plan. **See** Exhibit A(1) MUT-38. Under the Plan, the defendant delegates to United the authority to interpret the Plan and make final and binding decisions "regarding the amount and payment of any Plan benefits in accordance with the terms of the Plan." **See, e.g.,** Index Exhibit A(1) MUT-38; Exhibit A(3) MUT-323. Since, the Plan gives the plan administrator discretionary authority to determine

eligibility for benefits, then the plan administrator's decision will be reviewed for an abuse of discretion.

## B.　Substantial Evidence

Under an abuse of discretion standard, a plan administrator's decision will stand if reasonable, even if the court disagrees with the interpretation. **King v. Hartford Life & Acc. Ins. Co.**, 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc). A decision is reasonable if it is "supported by substantial evidence." **Id.** at 999. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Consol. Edison Co. of New York v. NLRB**, 305 U.S. 197, 229 (1938); **Shipley v. Arkansas Blue Cross & Blue Shield**, 333 F.3d 898, 901 (8th Cir. 2003).

The defendant received opinions from four different doctors relevant to the issue of whether the plaintiff was eligible for benefits. The plaintiff's surgeon, Dr. Gooding, opined the plaintiff should not return to work until at least December 1, 2003, but that she was recovering slowly and may have some difficulty standing or sitting in one position for an extended period of time. **See** Exhibit A(2) MUT-150 to MUT-151. Dr. Gooding did not state the plaintiff suffered from an impairment significant enough to cause permanent or total disability. **Id.** The plaintiff's family physician, Dr. Cronican, provided an opinion the plaintiff "should pursue long-term disability." **See** Exhibit A(2) MUT-146 to MUT-148. Dr. Cronican relied primarily on the plaintiff's reports of disabling pain to determine the plaintiff could not be gainfully employed. **Id.**; Exhibit A(2) MUT-80. In contrast to the plaintiff's physicians, Dr. Taylon, a neurosurgeon who conducted an IME of the plaintiff, determined the plaintiff could work a full day with restrictions. **See** Exhibit A(2) MUT-103 to MUT-106. Additionally, Dr. Mark, a neurosurgeon, who provided a peer review opinion, determined there was no objective medical reason to prevent the plaintiff from functioning in her sedentary occupation on a full-time basis with the restrictions indicated by Dr. Taylon. **See** Exhibit A(2) MUT-70 to MUT-72.

"Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled." **Delta Family-Care**

***Disability & Survivorship Plan v. Marshall***, 258 F.3d 834, 843 (8th Cir. 2001) (finding that district court erred in requiring plan administrator to accord greater deference to the opinions of treating physicians). A plan administrator is entitled to "discount a treating physician's opinion in favor of a contrary opinion produced by an independent examiner." ***Smith v. UNUM Life Ins. Co. of Am.***, 305 F.3d 789, 795 (8th Cir. 2002) (internal quotations citation omitted) ("If a plan administrator is dissatisfied with the medical evidence submitted by an employee's treating physician(s), it may require the employee to undergo an IME and may discount a treating physician's opinion."). "The 'treating physician rule'--that opinions of treating physicians must be accorded special weight-- does not apply to disability benefit determinations under plans governed by ERISA." ***Hunt***, 425 F.3d at 491 (**citing *Black & Decker Disability Plan v. Nord***, 538 U.S. 822, 825 (2003)). Further, "an administrator may deny benefits based on a lack of objective evidence of disability." ***Id.*** (**citing *McGee v. Reliance Standard Life Ins. Co.***, 360 F.3d 921, 924-25 (8th Cir. 2004)); **see *Coker v. Metropolitan Life. Ins. Co.***, 281 F.3d 793, 799 (8th Cir. 2002). This is true even where the plaintiff has self-reported complaints. ***Hunt***, 425 F.3d at 491 (noting complaints of extreme tiredness, fatigue, mental confusion, loss of memory, anxiety attacks, and depression).

There is evidence in the record both for and against the plaintiff's claim to continuing long-term disability benefits. Reasonable minds could accept Dr. Taylon's and Dr. Mark's conclusions about the plaintiff. Certainly, reasonable minds could also disagree with their conclusions. Under Eighth Circuit precedent, the defendant did not abuse its discretion in determining that the plaintiff was not entitled to additional benefits. The court concludes that conflicting medical opinions were presented to the Plan, and that there was "substantial evidence" to support the Plan's decision to terminate the plaintiff's benefits. Upon consideration,

**IT IS ORDERED:**
1. The defendant's Motion for Summary Judgment (Filing No. 12) is granted.
2. This action and the plaintiff's Complaint are dismissed with prejudice.

3. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

DATED this 9th day of December, 2005.

        BY THE COURT:

        s/Joseph F. Bataillon
        JOSEPH F. BATAILLON
        United States District Judge